
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PAUL V. DONLAN, an individual, and on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION, USAA CASUALTY INSURANCE CO., USAA GENERAL INDEMNITY CO., GARRISON PROPERTY AND CASUALTY INS. CO., and CCC INTELLIGENT SOLUTIONS INCORPORATED,<br><br>Defendants. | No.<br><br>COMPLAINT<br><br>JURY DEMAND |

COMPLAINT



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**TABLE OF CONTENTS**

<u>Page</u>

I. NATURE OF THE CASE ...................................................................................................1

II. JURISDICTION .................................................................................................................2

III. VENUE ...............................................................................................................................3

IV. PARTIES ............................................................................................................................3

V. FACTUAL ALLEGATIONS .............................................................................................4

    A. USAA obtains and relies on manipulated data from CCC to underpay total loss claims. ....................................................................................................4

    B. USAA underpaid the total loss claims of Plaintiff. ...............................................8

VI. CLASS ACTION ALLEGATIONS ...................................................................................9

FIRST CAUSE OF ACTION (BREACH OF CONTRACT—INSURER DEFENDANTS) .......11

SECOND CAUSE OF ACTION (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING—INSURER DEFENDANTS)........................................12

THIRD CAUSE OF ACTION (CONSUMER PROTECTION ACT, VIOLATION OF WASH. REV. CODE § 19.86.020— ALL DEFENDANTS) ...........................................12

FOURTH CAUSE OF ACTION (CIVIL CONSPIRACY—ALL DEFENDANTS)....................13

FIFTH CAUSE OF ACTION (DECLARATORY AND INJUNCTIVE RELIEF—INSURER DEFENDANTS) ................................................................................................................14

PRAYER FOR RELIEF ................................................................................................................15

JURY DEMAND ..........................................................................................................................15

COMPLAINT      i



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

# I. NATURE OF THE CASE

1. When a person's vehicle is declared a total loss, an automobile insurance company must not underpay claims by manipulating the data used to value the vehicle. Specifically, Washington law[1] prohibits insurance companies from reducing claim values for total losses with arbitrary, unexplained, and unjustified adjustments to the condition of comparable vehicles that are used to value the loss, bearing no relation to actual cash value. An insurer also must not misstate or conceal material facts that bear upon its estimate of value. Likewise, companies that sell valuation data to the insurers must not make arbitrary, unexplained, and unjustified adjustments to vehicle values and must ensure that they provide accurate and reliable vehicle values to insurers that pay total loss claims.

2. In negotiating and settling total loss claims, Defendants USAA[2] and CCC Intelligent Solutions Inc. (CCC) flagrantly violate these rules. Defendants reduce the value of comparable vehicles by an arbitrary amount that they deem a "condition adjustment." They do so without itemizing or explaining the basis for the adjustment as required by Washington law. Defendants apply a uniform "condition adjustment" to multiple comparable vehicles involved in a valuation without even distinguishing one vehicle from the next. These arbitrary and unjustified condition adjustments artificially and improperly reduce claim payments by hundreds or thousands of dollars to plaintiffs and thousands of other policyholders. And instead of using comparable vehicles that they deem to be in the same condition as the loss vehicle—which would avoid the need for such adjustments—Defendants go out of their way to base their valuations on comparable vehicles that they deem to require large negative condition adjustments.

3. USAA is an insurance company bound to process claims fairly and make their insureds whole after an accident. USAA's systematic under-valuations and underpayments

---

[1] *See, e.g.*, WAC 284-30-320 and 391.

[2] Throughout this Complaint, unless otherwise noted, the terms "USAA" and "INSURER DEFENDANTS" refer to Defendants United Services Automobile Association, USAA Casualty Insurance Co., USAA General Indemnity Co., Garrison Property and Casualty Insurance Co., collectively.

COMPLAINT  1
010743-20/1577818 V1

1  violates its insurance contracts with its insureds as well as Washington regulations[3] governing the adjustment of total loss claims. USAA's actions also violate Washington prohibitions on consumer deception and settling insurance claims in bad faith.

4.      Defendant CCC Intelligent Solutions (CCC) represents that it is a "leading provider" of "big data insights" to the insurance industry. CCC provides vehicle valuations to USAA for paying total-loss vehicle claims. CCC unlawfully conspires with USAA to undervalue total loss claims and acts contrary to law, including total loss regulations WAC 284-30-320 and 391, by furnishing arbitrary and unexplained condition adjustments for use in the claims handling process.

5.      Plaintiff brings this class action on behalf of all those insured under automobile insurance policies issued in the State of Washington by USAA whose claim valuations were based upon the values of comparable vehicles that were reduced by artificial, unexplained "condition adjustments" that were supplied by CCC.

6.      Plaintiff seeks for themselves and the class compensatory damages, treble damages, and attorney's fees, as well as declaratory and injunctive relief.

## II.    JURISDICTION

7.      This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. Plaintiff is a citizen of Washington, USAA is a citizen of Texas (where it is incorporated and has its principal place of business), and CCC is a citizen of Delaware (where it is incorporated) and has its principal place of business in Illinois.

8.      This Court has personal jurisdiction over USAA because USAA is a corporation licensed and authorized to do business in Washington and has transacted business in Washington. This Court has personal jurisdiction over CCC because CCC has purposefully directed its activities toward Washington by contracting to provide valuation services to

---

[3] *See, e.g.*, WAC 284-30-320 and 391.

COMPLAINT — 2

010743-20/1577818 V1

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

insurance carriers in Washington for use in settling and underpaying total loss claims of Washington resident insureds. This Court has personal jurisdiction over Plaintiff because Plaintiff consents to this Court's jurisdiction.

### III.   VENUE

9. Venue is proper in this District under 28 U.S.C. § 1391 because this is the District in which Plaintiff's insurance benefits were denied and the cause of action arose.

### IV.   PARTIES

10. Plaintiff Paul V. Donlan ("Donlan") was at all relevant times a resident of the State of Washington.

11. At all times pertinent, Donlan was insured under a policy of automobile insurance with USAA that included coverage for the total loss of a vehicle.

12. Defendant United Services Automobile Association is a fire and casualty insurance corporation organized under the laws of Texas with its principal place of business in Texas.

13. Defendant United Services Automobile Association is the parent corporation of the other Insurer Defendants and the managing agent and operator of those companies. Prospective insurance customers contact United Services Automobile Association, which places customers in policies underwritten by its subsidiaries once they sign up for coverage.

14. Defendant USAA Casualty Insurance Co. is a fire and casualty insurance corporation organized under the laws of Texas with its principal place of business in Texas.

15. Defendant USAA General Indemnity Co. is a fire and casualty insurance corporation organized under the laws of Texas with its principal place of business in Texas.

16. Defendant Garrison Property and Casualty Company ("Garrison") is a fire and casualty insurance corporation organized under the laws of Texas with its principal place of business in Texas.

17. CCC is a Delaware corporation with its principal place of business in Illinois.



# V. FACTUAL ALLEGATIONS

**A.    USAA obtains and relies on manipulated data from CCC to underpay total loss claims.**

18.    All allegations contained in previous paragraphs are incorporated herein by reference.

19.    USAA is a diversified financial services group of companies comprising, among other things, several national property and casualty insurance companies including Plaintiff's insurer, USAA Casualty Insurance Company. The parent organization, United Services Automobile Association, provides property and casualty insurance coverage itself and through its subsidiaries. Marketing and claims handling for USAA insureds is centrally administered, with a single contact number for all USAA insureds and a single group of adjusters handling claims for all USAA property and casualty insurers. The business affairs of USAA are managed by a single Board of Directors and Executive Council.

20.    Upon information and belief, USAA utilizes the same policy forms and policy provisions material to this case for all USAA insureds regardless of the carrier underwriting the policy. Upon information and belief, USAA uses the same claims handling practices, procedures, and personnel for all USAA insureds regardless of the carrier underwriting the policy. At the point coverage is purchased, the insured contacts a centralized customer service number for all USAA property and casualty divisions and is not given a choice about which particular carrier will underwrite coverage. USAA maintains a single corporate headquarters, CEO, contact phone number, and website across its property and casualty divisions. Premium payments are centrally administered for all USAA insureds. In essence, USAA administers a unified insurance sales and claims handling operation for its nominally separate property and casualty divisions.

21.    USAA touts itself and its subsidiaries as reliable and trustworthy sources of insurance coverage. On its website, USAA states, "We know what it means to serve." USAA claims to pledge itself to "the financial security of its members" and "core values of Service, Loyalty, Honesty and Integrity."

22.    But when USAA's customers' cars are wrecked in life-changing accidents, or are otherwise totaled, it betrays these principles, playing games and putting profits ahead of people.

1  With CCC's assistance, USAA fudges the numbers to shortchange vulnerable consumers, who are relying on USAA to pay fair value so they can afford to buy a replacement, which in many cases was their sole car.

23.  Pursuant to their agreement, CCC provides USAA with valuation reports that apply unjustified, unexplained, and unitemized condition adjustments to the values of comparable vehicles used to value total loss claims. Both Defendants work in concert to create policies and infrastructure that cheat insureds out of dollars to which they are entitled.

24.  USAA's standard form automobile policy provides coverage for the total loss of a vehicle.

25.  For total loss claims, USAA must base any cash settlement offer on the "actual cash value of a comparable motor vehicle." WASH. ADMIN. CODE § 284-30-391(2).

26.  In the event of a total loss, USAA's policy promises they will pay the insured the "actual cash value" of the vehicle before the loss.

27.  For total loss claims, USAA must "[b]ase all offers on itemized and verifiable dollar amounts for vehicles that are currently available . . . using appropriate deductions or additions for options, mileage or condition when determining comparability." WASH. ADMIN. CODE § 284-30-391(4)(b).

28.  For total loss claims, "[a]ny additions or deductions from the actual cash value must be explained to the claimant and must be itemized showing specific dollar amounts." WASH. ADMIN. CODE § 284-30-391(5)(d). The purpose of this requirement is to ensure that any adjustments are reasonable and justified and to ensure that consumers have the ability to evaluate and challenge any deductions that are improper.

29.  Washington law makes it the duty of the insurance company to ensure the accuracy of total loss automobile valuations. WAC 284-30-380(7).

30.  Systemically, USAA fails to offer and pay the actual cash value.

31.  USAA bases its offers and payments on manipulated data and reports furnished by CCC that do not satisfy Washington law, imposing arbitrary and unexplained "condition adjustments" to artificially reduce the values of comparable vehicles.

32. CCC advertises itself as "a leading provider of innovative cloud, mobile, telematics, hyperscale technologies and apps for the automotive, insurance, and collision repair industry." Its website states that "CCC's solutions and big data insights are delivered through the powerful CCC ONE™ platform, which connects a vast network of 350+ insurance companies, 24,000+ repair facilities, OEMS, hundreds of parts suppliers, and dozens of third-party data and service providers." CCC caters to the needs and demands of the insurance industry, stating its aim to "[t]rack claim process efficiencies and help ensure customers [insurers] are happy and engaged."

33. CCC also touts the accuracy of its total loss valuations on its website. The website states, "CCC ONE Valuation offers accurate, verifiable total loss valuations." CCC promises to give insurers' customers "the confidence of knowing they're getting a vehicle valuation based on verifiable data." CCC says its services will "BOOST YOUR CUSTOMERS' CONFIDENCE" by making it "easier for you to explain the valuation to your customers."

34. CCC and USAA collaborates in the creation of the valuation report for each total loss vehicle. Under the contracts between CCC and USAA, CCC and USAA agreed that CCC would provide vehicle valuations based on current market data for total loss claims as well as a written report with that data for each total loss vehicle. USAA has contracted with CCC to furnish valuation reports to be used in the process of valuing total loss claims and adjusting the claims for insureds. Upon information and belief, USAA conducted due diligence on CCC's methodology or knew or should have known before contracting that CCC's application of condition adjustments to the values of comparable vehicles did not comply with Washington law and results in deception, delays, and underpayments of motor vehicle total loss claims.

35. For each claim, USAA provides basic information about the loss vehicle and its condition and configuration. CCC then populates the report with the sales prices of purportedly comparable vehicles it identified that recently sold or were for sale in the geographic area of the insured, and then applies downward condition adjustments to the values of those comparable vehicles. CCC takes an active role in collecting valuation data on comparable vehicles and then reducing those valuations to serve the economic interests of the insurer. These reports are

arbitrary, unexplained, unjustified, unitemized, inconsistent, and contrary to Washington law, as alleged throughout this Complaint.

36. The reports contain a purported valuation for the loss vehicle based upon the data in the report. Upon information and belief, USAA verifies the results of some or all of CCC's total loss valuations and know, or should know, that the application of condition adjustments to the values of comparable vehicles does not comply with Washington law and results in deception, delays, and underpayments of motor vehicle total loss claims.

37. Upon information and belief, CCC is aware that its total loss valuation method does not comply with Washington law. CCC designs its products and services to serve the needs of the insurance industry nationwide. It markets and documents its products and services to insurers on a state-specific basis. Washington's total loss regulations, WAC 284-30-320 and -391, expressly require itemization and explanation of condition adjustments. But CCC furnishes the valuation reports to USAA anyway to further the economic interests of USAA at the expense of their insurance customers.

38. USAA offers each insured a claim settlement equivalent to the valuation amount found on the report.

39. The valuation reports reduce the estimated values of comparable vehicles, citing a "condition adjustment," but fail to itemize or explain the basis for these condition adjustments. These condition adjustments are arbitrary and unjustified. Indeed, even though each comparable vehicle has unique characteristics, the reports reduce the value of multiple comparable vehicles by the same amount, down to the last dollar, without any itemization or explanation for the amount. These blind and arbitrary reductions bear no relation to the actual fair market value of the comparable vehicles or the loss vehicle. The application of an arbitrary condition adjustment to reduce the value of comparable vehicles artificially reduces the valuation of the loss vehicle to benefit the insurer at the expense of the insured.

40. The valuation reports contain no indication that the comparable vehicles listed were individually inspected by CCC, and upon information and belief, they were not individually inspected by CCC.

41. The valuation report contains no indication that the condition adjustment to the comparable vehicles was based on an individual inspection of the comparable vehicles in the valuation report, and upon information and belief, it was not based on an individual inspection of the comparable vehicles in the valuation report.

42. Further, Washington regulations require that any weighting of comparable vehicles used to calculate the weighted average of their values "must be documented and explained." WAC 284-30-392(4)(c). Yet as a regular practice, CCC fails to document and explain the selection and weighting of the comparable vehicle values in its valuation reports.

**B.** USAA underpaid the total loss claims of Plaintiff.

43. Donlan owned a vehicle which was involved in an accident and damaged so seriously as to be a total loss.

44. Donlan made a claim with USAA for the total loss of his vehicle. USAA provided a written settlement offer to Donlan.

45. CCC furnished a valuation report to USAA to be used in adjusting the claim for the value of the vehicle, in accordance with its contract with USAA. USAA based the settlement offer upon the valuation report obtained from CCC.

46. Donlan was the owner of a 2010 Audi A6 SW 4X4 that was totaled in an accident in 2018. USAA offered to pay, and did pay, $16,152.56 attributable to the value of the vehicle (minus deductible), citing the CCC valuation report. Donlan was provided the CCC valuation report when USAA presented its proposed adjustment. Days after the accident, USAA emailed the CCC report to Donlan together with a letter outlining the vehicle valuation and claim settlement offer that was based in part on—and specifically referred Donlan to—the CCC valuation. The CCC valuation report was presented as an authoritative source supporting USAA's determination of value. The CCC valuation report listed values of three different comparable vehicles and applied a negative uniform condition adjustment of $1,027 to all three of them without itemizing or explaining the basis of the adjustment as required by Washington law. The report reduced the amount of these comparable vehicles by the same amount, regardless

COMPLAINT — 8

of any individual differences in the condition of the vehicles. These blanket adjustments were arbitrary and unjustified, and they resulted in an underpayment of $1,027.

47. USAA and CCC have acted with at least reckless disregard of the rights of others by manipulating the numbers to settle total loss claims. USAA and CCC have devised valuation methods that are unfair, misleading, deliberately inconsistent, and calculated to confuse and deceive consumers and their advocates in the settlement process.

48. USAA and CCC's practices have cost consumers tens of millions of dollars in losses as their claims go underpaid. Meanwhile, USAA and CCC reap millions in wrongful profits by betraying the trust of USAA insureds.

## VI.   CLASS ACTION ALLEGATIONS

49. This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 23. Plaintiff brings all claims herein individually and as a class action (for the class defined below), pursuant to Federal Rule of Civil Procedure 23.

50. The class consists of the following:

> All persons insured by United Services Automobile Association, USAA Casualty Insurance Co., USAA General Indemnity Co., or Garrison Property and Casualty Insurance Co., under a private passenger vehicle policy who, from the earliest allowable time to the date of judgment, received a first-party total loss settlement or settlement offer based in whole or in part on the price of comparable vehicles reduced by a "condition adjustment."

51. While the exact number of members cannot be determined, the class consists at a minimum of thousands of persons located throughout the State of Washington. The members of the class are therefore so numerous that joinder of all members is impracticable. The exact number of class members can readily be determined by documents produced by the Defendants.

52. There are questions of fact and law common to the class, including the following:

> i. Whether the Insurer Defendants applied arbitrary and unexplained condition adjustments to comparable vehicles to calculate the value of loss vehicles;

  ii. Whether, through the foregoing practices, Insurer Defendants breached its contracts with its insureds;

  iii. Whether, through the foregoing practices, Insurer Defendants committed a breach of the common law duty of good faith and fair dealing;

  iv. Whether, through the foregoing practices, Insurer Defendants violated the Insurance Fair Conduct Act, WASH. REV. CODE § 48.30.010 *et seq.*;

  v. Whether, through the foregoing practices, Insurer Defendants violated regulations governing unfair claims settlement practices including WASH. ADMIN. CODE § 284-30-330 *et seq.*;

  vi. Whether, through the foregoing practices, Defendants violated the Consumer Protection Act, WASH. REV. CODE § 19.86.020;

  vii. Whether, through the foregoing practices, CCC negligently supplied information for the guidance of others;

  viii. Whether, through the foregoing practices, Insurer Defendants and CCC entered into an unlawful conspiracy;

  ix. Whether the Insurer Defendants' use of improper condition adjustments to value loss vehicles caused injury to Plaintiff and the class;

  x. Whether Insurer Defendants' actions were unreasonable, frivolous, or unfounded;

  xi. Whether Defendants' actions were reckless, malicious, or willful;

  xii. Whether Plaintiff and the class are entitled to an award of compensatory damages;

  xiii. Whether Plaintiff and the class are entitled to an award of treble damages;

  xiv. Whether Plaintiff and the class are entitled to an award of attorney's fees;

  xv. Whether Plaintiff and the class are entitled to declaratory and injunctive relief.

53. Plaintiff has the same interests in this matter as all other members of the class, and his claim is typical of those of all members of the class. Plaintiff's claim is coincident with and not antagonistic to those of other class members he seeks to represent. Plaintiff and all class members have sustained damages arising out of the Defendants' common course of conduct as outlined herein. The damages of each class member were caused by the Defendants' wrongful conduct.

54. Plaintiff is committed to pursuing this action and have retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiff will fairly and adequately represent the interests of the class members.

55. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because the Defendants' actions are generally applicable to the class as a whole, and Plaintiffs seeks, *inter alia*, equitable remedies with respect to the class as a whole.

56. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact enumerated above predominate over questions affecting only individual members of the class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Plaintiff's counsel, highly experienced in insurance litigation and class action litigation, foresees little difficulty in the management of this case as a class action.

## FIRST CAUSE OF ACTION
(Breach of Contract—INSURER DEFENDANTS)

57. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

58. The USAA insurance contract specifically provides for payment of the "actual cash value" of a vehicle deemed a total loss.

59. USAA has breached their contracts by not offering to settle and by not settling claims based upon the actual cash value of loss vehicles. USAA departed from the use of actual cash values by basing their valuation and payment of the claim on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained.

60. USAA's numerous breaches have resulted in a systematic failure to pay the actual cash value of total loss vehicles as required by contract.

61. USAA's breaches and violations have caused damage to Plaintiff and the class.

SECOND CAUSE OF ACTION
(Breach of the Implied Covenant of Good Faith and Fair Dealing—INSURER DEFENDANTS)

62. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

63. USAA owed Plaintiff and class members, as their insureds, a duty of good faith and fair dealing at all times during the existence of the insurance contract and while providing automobile insurance coverage, including when handling total loss claims for their insureds.

64. USAA purposefully, in bad faith, and without regard to the rights of Plaintiff and the class, failed to pay the actual cash value of total loss vehicles. USAA's actions breached the insurance contract and were unreasonable, frivolous, and unfounded.

65. USAA's unfair acts and/or acts of bad faith include basing their valuation and payment of claims on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained.

66. USAA breached the covenant of good faith and fair dealing with the aforementioned conduct.

67. USAA's breach of the obligation of good faith and fair dealing caused Plaintiff and class members to incur damages as more fully set forth below.

THIRD CAUSE OF ACTION
(Consumer Protection Act, Violation of WASH. REV. CODE § 19.86.020—
All Defendants)

68. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

69. Defendants' actions complained of herein are deceptive trade practices that have the capacity to and do deceive consumers, as Defendants unreasonably denied payment of benefits to Plaintiff and the class and knowingly misrepresented the basis for their total loss valuations. USAA failed to adopt and implement reasonable standards for the investigation of claims. USAA failed to conduct a reasonable investigation regarding their claims payments. USAA further made false representations as to the characteristics and benefits of their total loss coverage and insurance policies and represented that they were of a particular standard, quality,

or grade knowing they were not. CCC intentionally or negligently supplied false and misleading valuation data to USAA for the guidance of USAA and their customers in the settlement of total loss claims, knowing the information would be used for this purpose and that the insured would see and rely on CCC's comparables. CCC's recommended comparable valuations were false because they included condition adjustments to the values of comparable vehicles that were unjustified, arbitrary, unitemized, and unexplained. These adjustments were false because they had no basis in fact, and regardless they resulted in a false statement of the value of the loss vehicle because they are contrary to Washington law and should not have been applied.

70.     Defendants' aforementioned conduct continues to occur in the course of their business. Defendants' conduct is part of a generalized course of conduct repeated on thousands of occasions, and thus has an impact on the public interest.

71.     Defendants' aforementioned conduct is in violation of the Washington Consumer Protection Act, in particular, but not limited to, WASH. REV. CODE § 19.86.020.

72.     As a result of Defendants' actions, Plaintiff and class members incurred damages as more fully set forth below.

FOURTH CAUSE OF ACTION
(Civil Conspiracy—All Defendants)

73.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

74.     As alleged above, CCC and USAA entered into agreements under which CCC would furnish USAA with valuation reports that undervalued total loss claims by applying unjustified, unexplained, and unitemized condition adjustments to the values of comparable vehicles. The use of these valuation reports to process and underpay claims violates USAA's contracts with their insureds as well as the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020.

75.     The agreements between CCC and USAA constitute an agreement to accomplish a unlawful purposes, to wit, the breach of the insurance contracts (including provisions of Washington law that dictate the method by which total loss claims are valued) and Washington's

prohibitions of unfair and deceptive claims handling practices. The agreements between CCC and USAA therefore constitute a civil conspiracy under Washington law.

76. As a result of Defendants' actions, Plaintiff and class members incurred damages as more fully set forth below.

FIFTH CAUSE OF ACTION
(Declaratory and Injunctive Relief—INSURER DEFENDANTS)

77. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

78. Plaintiff brings this cause of action for himself and the class pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 seeking a declaration that, for those who maintain an auto insurance policy with USAA, it is a violation of Washington law and the insurance contract for all Defendants to base their valuation and/or payment of claims on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained.

79. This court has the power to declare the rights of said USAA policyholders and those who would be insured under such policies and who may suffer similar losses in the future, as well as those who have suffered valuation-related losses.

80. Plaintiff, for himself and on behalf of the Class, seek a declaration of rights under the USAA policy, and seek a declaration of the rights and liabilities of the parties herein.

81. With respect to Defendants' continuing unlawful practices, Plaintiff has no plain, speedy, or adequate remedy at law, the interests of the parties favor an injunction, and an injunction is in the public interest. Plaintiff therefore seeks an order permanently enjoining all Defendants from basing their valuations and/or payments of claims on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained.



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following judgment:

A. An Order certifying this action as a class action, including certifying each cause of action under the appropriate subsection of Fed. R. Civ. P. 23;

B. An Order appointing Plaintiff as class representatives and appointing the undersigned counsel to represent the class;

C. Declaratory and injunctive relief, including an injunction requiring Defendants to cease and desist from basing their valuation and payment of the claim on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained;

D. Treble damages under common law and by statute, under WASH. REV. CODE § 19.86.090;

E. Compensatory damages as warranted by Defendants' breach of the contracts of insurance, and their bad faith;

F. An award of attorney's fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed upon the class; and

G. Such other and further relief as this Court may deem just, equitable, or proper, including a designation that any unclaimed monies may go to the next best use.

JURY DEMAND

Pursuant to Rule Local Rules W.D. Wash. LCR 38, Plaintiff demands a trial by jury of all of the claims asserted in this complaint so triable.

| | | |
|---|---|---|
| 1 | Dated: July 23, 2021 | Respectfully submitted, |
| 2 | | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 3 | | By   */s/ Steve W. Berman* |
| 4 | |      Steve W. Berman |

Steve W. Berman (WSBA #12536)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Robert B. Carey (*pro hac vice*)
John M. DeStefano (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 224-2628
rob@hbsslaw.com
johnd@hbsslaw.com

